**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

PureChoice, Inc.,

Plaintiff,

v.

Jeffrey Macke,

Defendant.

Civil No. 07-1290 (DWF/SRN)

**MEMORANDUM OPINION AND ORDER**

---

Jack Y. Perry, Esq., Max C. Heerman, Esq., and Valerie T. Herring, Esq., Briggs & Morgan, PA, counsel for Plaintiff.

Antoinette Waller, Esq., and Robert C. O'Brien, Esq., Arent Fox LLP; and C. Todd Koebele, Esq., John E. Brandt, Esq., and William L. Moran, Esq., Murnane Brandt, PA, counsel for Defendant.

---

## INTRODUCTION

This matter is currently before the Court on an Appeal/Objections to Magistrate Judge Susan Richard Nelson's August 1, 2008 Order ("Magistrate Judge's Order") submitted by PureChoice, Inc. ("PureChoice") and a Motion for Summary Judgment brought by Jeffrey Macke. For the reasons stated below, the Court affirms the Magistrate's Order and grants Defendant's motion.

## BACKGROUND

PureChoice is an off-site quality monitoring company that was formed in 1992. Jeffrey Macke's father, Kenneth Macke, was a major shareholder of PureChoice and served on PureChoice's board of directors from 1996 until July 2003. As a director, Kenneth Macke personally guaranteed several loans for PureChoice.

One such guaranty was made on July 14, 2001, on a $2 million loan obtained by PureChoice from M&I Marshall and Isley Bank ("M&I"). In September 2002, PureChoice's board of directors approved a financing plan using convertible debt in order to raise money for the company (the "Offering"). The initial amount of the Offering was to be $12 million and each loan was to be evidenced by a purchase agreement and promissory notes secured by the company's assets and personally guaranteed by the three members of PureChoice's board of directors, including Kenneth Macke. On September 12, 2002, the three PureChoice directors, including Kenneth Macke, signed unconditional personal guaranties for up to the full amount of the Offering (the "Guaranty"). The Guaranty reads in part:

> The Guarantors absolutely and unconditionally guarantee to the Investors, jointly and severally, the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, the unpaid obligations of PureChoice under each of the Notes that have not been previously converted or redeemed (hereinafter, the "Indebtedness").

(Pl.'s Ex. 2 at ¶ 2.) PureChoice alleges that the capital received from the Offering would have allowed it to pay off its high interest loans and to obtain much-needed working capital.

In May or June 2003, Kenneth Macke and his wife, Kathleen Macke, retained attorney Paul Ravich to represent their interests in connection with financial matters, including concerns about the PureChoice guaranties. Then, on August 26, 2003, Kenneth Macke's doctor certified that Kenneth Macke had become incapacitated on or before August 12, 2003, and was unable to manage his affairs in his own best interests.[1] (Decl. of Kathleen Macke ("K. Macke Decl.") ¶ 3, Ex. 4.) Ravich forwarded this information to counsel for PureChoice with a request that such information be shared with PureChoice's board of directors. (*Id.*) In August 2003, Kenneth Macke granted Kathleen Macke Durable Power of Attorney for Financial Management. (Pl.'s Ex. 31.)

PureChoice ultimately defaulted on loans and the guarantors failed to pay. In November 2003, First Commercial Bank and First National Bank sued PureChoice and its directors, including Kenneth Macke. In a letter dated November 24, 2003, Ravich informed PureChoice that Kenneth Macke was legally unable to enter into any loan repayment agreement and that Kenneth Macke had defenses to the claims made in the action. In a separate action brought by M&I against PureChoice, Kenneth Macke, and two other guarantors (the "M&I Litigation"), Kenneth Macke denied liability for several different bank guarantees he had allegedly made on behalf of PureChoice between November 1999 and June 2003. In that action, Kenneth Macke asserted that he was not

---

[1] Kenneth Macke suffered from a terminal illness and passed away in June 2008. In the years preceding his death, Kenneth Macke experienced mental deterioration and by August 2003 was completely incapacitated.

mentally competent to make the guarantees at the time they were made.[2] The M&I Litigation settled in October 2006. The parties entered into a comprehensive settlement agreement, whereby PureChoice agreed to relieve Kenneth Macke from any liability related to any purported guaranty made by Kenneth Macke on PureChoice's behalf. The settlement agreement further provided:

> . . . this Agreement has no impact whatsoever on any claims PureChoice . . . may have against Jeffrey Macke . . . including, without limitation, any claim against anyone that was involved individually or in concert with anyone else to in any way interfere with or impede PureChoice's [Offering].

(K. Macke Decl. ¶ 10, Ex. 8 at ¶ 6b.)

In February 2007, PureChoice initiated the current action against Jeffrey Macke asserting claims of tortious interference with contract, common law fraud, and tortious interference with prospective business advantage. Only the fraud and tortious interference with prospective business advantage claims remain. In support of its claims, PureChoice alleges that Jeffrey Macke interfered with a personal guarantee made by Kenneth Macke. PureChoice alleges that by 2002, Jeffrey Macke had determined that PureChoice was a bad investment for his father and was upset about his father's Guaranty. PureChoice alleges that beginning in May or June 2003, Jeffrey Macke sought to discourage investors' investments in the Offering. Specifically, PureChoice contends

[2] Because his mental competence was in controversy, Kenneth Macke produced his medical records pursuant to a protective order prior to his death. In this action, PureChoice brought a Motion to Permit Its Use and Production of Documents Acquired from Kenneth Macke in the M&I Litigation. On September 15, 2008, Magistrate Judge

(Footnote Continued on Next Page)

that Jeffrey Macke interfered with the Offering by directing Paul Ravich, Kenneth Macke's attorney, to make several false representations, including representations that Ravich represented Kenneth Macke, that Kenneth Macke did not have the financial resources and did not intend to honor the Guaranty, and that Kenneth Macke was mentally incompetent when he signed the Guaranty. PureChoice alleges that Jeffrey Macke made these statements knowing them to be false and with the intention of discouraging potential investors from investing in the Offering. PureChoice further asserts that when investors learned that Kenneth Macke was suspending and challenging his guarantee, the 2003 debt offering collapsed, allegedly costing PureChoice millions of dollars in damages.

In support of its allegations, PureChoice relies on four letters sent by Ravich to PureChoice or its counsel. PureChoice refers to these letters as the "Interference Letters." The first of these letters was sent to PureChoice on June 9, 2003. In this letter, Ravich informed PureChoice that he represented Kenneth Macke and that the Guaranty, as to Kenneth Macke, was suspended pending the receipt and evaluation of certain documents from PureChoice. (K. Macke Decl. ¶ 3, Ex. 1.) The letter reads in part:

> I represent Mr. Kenneth A. Macke and this letter is written on his behalf.
>
> . . .
>
> . . . Mr. Macke hereby suspends his guarantee of the Series A Convertible

---

(Footnote Continued From Previous Page)
Nelson granted in part and denied in part that motion. Neither party objected to that decision.

> Promissory Notes pending our receipt and evaluation of the [requested] information/documents. Accordingly, Mr. Macke's guarantee of the Notes will not be effective until and unless you are notified in writing, of the renewed effectiveness.

(*Id*.)

The second letter PureChoice relies on is a July 14, 2003 letter from Ravich to counsel for PureChoice. In the July 14 letter, Ravich indicated that there were significant legal issues impacting the enforceability of the Guaranty, including concerns over the manner in which the Guaranty was executed and related to Kenneth Macke's health. The letter reads in part: "As I believe you know, Mr. Macke has suffered from serious health problems for a substantial period of time and those problems, among other things, affect his cognitive ability. I can tell you that Mr. Macke has no recollection of signing the guaranty." (K. Macke Decl. ¶ 3, Ex. 2.) Ravich also stated: "Mr. Macke's financial condition and lack of liquidity raise serious questions as to his ability to honor any guaranty of the notes." (*Id*.) In addition, the letter demanded that PureChoice make "full disclosure of the financial condition of the guarantors." (*Id*.)

The third letter was sent to counsel for PureChoice on August 1, 2003. In the August 1 letter, Ravich stated that Kenneth Macke's "financial position is extremely <u>illiquid</u> and he presently would be unable to honor guaranties if required to do so." (K. Macke Decl. ¶ 3, Ex. 3) (emphasis in the original.)

Finally, PureChoice relies on the November 24, 2003 letter discussed above. The November 24 letter reads in part:

> Mr. Norman Baer of Anthony, Ostlund & Baer[3] and I [Ravich] represent Kenneth Macke and this letter is written on his behalf.
>
> . . .
>
> We have learned that [PureChoice is] meeting with prospective investors in an effort to raise money for the Company. We understand that statements have been made in these meetings that Mr. Macke will guarantee obligations of the Company. . . . Please be advised that neither the Company nor any of you have any authority to represent that Mr. Macke has guaranteed or will guarantee any obligation of the Company or of any other party. If any such guaranty is claimed to exist, Mr. Macke and his representatives will dispute its validity and effectiveness.

(K. Macke Decl. ¶ 3, Ex. 5.)

PureChoice asserts that it can establish the falsity of statements made in the "Interference Letters" by demonstrating that Kenneth Macke was mentally competent when he signed the Guaranty, that Kenneth Macke was financially able to honor the Guaranty, and that Jeffrey Macke was actually directing Ravich to make the alleged misrepresentations to PureChoice. PureChoice points to Kenneth Macke's incapacity as evidence that Ravich was actually representing Jeffrey Macke, not Kenneth Macke.

On August 13, 2007, PureChoice served a subpoena on Ravich, seeking production of items such as billing records and communications with Kenneth Macke. In response, Ravich produced some documents and a privilege log. PureChoice brought a motion to enforce the subpoena and for *in camera* review of the documents. Magistrate Judge Nelson granted the request for an *in camera* review and ordered Ravich to provide the Court with the contested documents. Magistrate Judge Nelson reviewed the documents

---

3 PureChoice has not alleged that Jeffrey Macke was directing Mr. Baer.

and held that all but one of the documents provided by Ravich are protected from disclosure under the work product doctrine. PureChoice appealed the Magistrate Judge's Order.

Presently before the Court is a Motion for Summary Judgment brought by Defendant and PureChoice's appeal/objections to Magistrate Judge Nelson's Order dated August 1, 2008. For the reasons stated below, the Court grants Defendant's Motion for Summary Judgment and affirms Magistrate Judge Nelson's August 1 Order.

## DISCUSSION

### I. Defendant's Motion for Summary Judgment

#### A. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at

747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**B. Fraud**

In order to establish fraud, PureChoice must show: (1) a false representation of a material fact; (2) made with knowledge of the falsity or made without knowing whether the statement was true or false; (3) made with the intention to induce plaintiff to act in reliance on the statement; (4) that the representation caused plaintiff to act in reliance; and (5) pecuniary damage as a result of the reliance. *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986). *See also M.H. and J.L.H. v. Caritas Family Servs.*, 488 N.W.2d 282 (Minn. 1992) (elements of intentional misrepresentation).

In support of its fraud claim, PureChoice alleges that Jeffrey Macke made four primary misrepresentations—(1) that Ravich represented Kenneth Macke; (2) that Kenneth Macke was suspending the Guaranty and intended to challenge its enforceability; (3) that Kenneth Macke lacked sufficient resources to honor the Guaranty; and (3) that Kenneth Macke lacked the mental capacity to sign the Guaranty in September 2002. PureChoice alleges that Jeffrey Macke is liable for fraud because he directed Ravich to communicate these misrepresentations to PureChoice.

To prevail on its fraud claim against Jeffrey Macke, PureChoice must allege sufficient facts of an actual misrepresentation. *See Williams v. Tweed*, 520 N.W.2d 515, 517 (Minn. Ct. App. 1994). The statement must also be attributable to the defendant. Therefore, a threshold issue with respect to PureChoice's fraud claim is whether there is sufficient evidence in the record to raise a fact issue as to whether Jeffrey Macke made the allegedly fraudulent representations contained in the "Interference Letters." Here, the "Interference Letters" were signed and sent by Ravich, purportedly on Kenneth Macke's behalf. Jeffrey Macke asserts that Ravich, at all times, was representing his father, Kenneth Macke, and that statements made by Ravich on behalf of his father cannot be attributed to him.

PureChoice asserts that Ravich's statements can be attributed to Jeffrey Macke because Ravich was actually representing Jeffrey Macke —not Kenneth Macke, and that Jeffrey Macke directed Ravich's alleged interference with the Offering and Guaranty. In support, PureChoice claims that Jeffrey Macke had been hostile towards PureChoice, that Jeffrey Macke corresponded with Ravich in the same way a client corresponds with his lawyer, and that Jeffrey Macke appointed himself his father's representative. In addition, PureChoice asserts that Kenneth Macke never expressed any ill-will towards PureChoice or objected to the Offering or Guaranty.

The Court has reviewed the record in this case and conducted an *in camera* review of the documents submitted pursuant to the August 13, 2007 subpoena. In two sworn affidavits, Ravich attested that he represented Kenneth Macke in relation to Kenneth

Macke's challenge of the Guaranty; that he never represented Jeffrey Macke in any capacity; and that Jeffrey Macke did not direct or control any work performed on Kenneth Macke's behalf. (Aff. of Paul H. Ravich ("Ravich Aff.") ¶¶ 3, 4, 6-9; Decl. of Paul H. Ravich ("Ravich Decl.") ¶¶ 2-5.) In addition, Jeffrey Macke attested in his declaration that he never hired Ravich in any capacity and that Ravich never served as Jeffrey Macke's legal counsel. (Decl. of Jeffrey Macke ("J. Macke Decl.") ¶ 6.) The record demonstrates that Jeffrey Macke did not receive any invoices from Ravich for services rendered to Kenneth Macke; instead, invoices were sent to and paid by Kenneth and Kathleen Macke. (J. Macke Decl. ¶¶ 6, 7; K. Macke Decl. ¶ 3.) Jeffrey Macke also testified that during the course of Ravich's representation of his father, Ravich "occasionally requested [Jeffrey Macke's] input and assistance," but that such input was to assist Ravich in his representation of Kenneth Macke. (J. Macke Decl. ¶ 7.)

In addition, the record contains an exchange of e-mails with PureChoice in June 2003, wherein Kenneth Macke confirms that Ravich was representing him. Specifically, on June 6, 2003, the President and CEO of PureChoice sent the following message to Kenneth Macke:

> Ken- I received a call from an attorney named Paul Ravich who said that he represents you. He is asking for information about your loan guarantees and stock holdings in PureChoice. Per protocol, and especially since I do not know him, I wanted to verify with you that it is ok to send information to him. Please advise.

(Pl.'s Ex. 54) Kenneth Macke responded, "Please send it to him." (Pl.'s Ex. 55.) Further, PureChoice has not pointed to any record evidence indicating that during PureChoice's

direct communication with Kenneth Macke that Kenneth Macke ever disclaimed Ravich's legal representation of him or that he retracted his legal challenges to the Guaranty.

PureChoice argues that Jeffrey Macke's parents effectively disclaimed responsibility for the alleged misrepresentations in the "Interference Letters" and conceded that Jeffrey Macke was directing Ravich in the M&I settlement agreement. In that agreement, Kenneth Macke, through his wife, represented that Kenneth and Kathleen Macke were not involved in any efforts to interfere with or impede the Offering at issue here. Specifically, the settlement agreement states the following:

> Neither Kenneth nor Kathleen Macke were involved individually or in concert with anyone else to interfere with or impede PureChoice's offering of securities pursuant to the confidential private placement memorandum dated December 5, 2002 and any supplements or amendments thereto ("Convertible Debenture Offering"), including, without limitation:
>
> > i. Any false statements related to Kenneth Macke's financial ability to honor the September 12, 2002 unconditional guaranty relating to the Convertible Debenture Offering ("Guaranty"); and
> >
> > ii. Any false statements related to the enforceability of the Guaranty signed by Kenneth Macke or related to Kenneth Macke's mental competency to execute the Guaranty.

(K. Macke Decl. ¶ 10, Ex. 8 at ¶ 6a.) The representations in the settlement agreement, however, do not specifically address the statements in the "Interference Letters"; nor do they disclaim or concede that any false statements were made. In addition, the representations in the settlement agreement do not attribute any false statements to Jeffrey

Macke.[4]

PureChoice also asserts that Ravich could not have represented Kenneth Macke if Kenneth Macke was, as Jeffrey Macke claims, incapacitated. PureChoice points out that Jeffrey Macke maintains that Kenneth Macke was incompetent at least as early as September 2002, yet also claims that Kenneth Macke retained an attorney in June 2003. The Court acknowledges potential inconsistencies in the assertions concerning Kenneth Macke's competency and retention of legal counsel. However, the Court declines to make any ruling with respect to the timing and extent of Kenneth Macke's incapacity or the effect that his incapacity may or may not have had on the validity of his legal representation. Such a determination is unnecessary. Even if Ravich's representation was somehow invalid because Kenneth Macke was not competent to retain him, PureChoice is still unable to point to record evidence demonstrating that Jeffrey Macke was orchestrating his parents' retention of Ravich or that Ravich was acting at Jeffrey Macke's direction and not on behalf of or in the interest of Kenneth Macke.

Based on the record before it, the Court concludes that there are no genuine issues of fact for trial. No reasonable juror could conclude that Ravich was not representing or acting on behalf of Kenneth Macke when the allegedly fraudulent statements were made in the "Interference Letters." In addition, no reasonable juror could conclude that Ravich was representing or speaking on behalf of Jeffrey Macke. Therefore, the statements

---

4 The Court notes that Jeffrey Macke was not a party to the M&I Litigation and did not sign the settlement agreement.

included in Ravich's "Interference Letters" cannot be imputed to Jeffrey Macke and PureChoice's fraud claim fails.[5]

### C. Tortious Interference

In opposition to Jeffrey Macke's previously ruled-on Motion to Dismiss, PureChoice asserted that its interference claim arose because Jeffrey Macke spread false information to third parties. Now PureChoice asserts that its tortious interference with prospective advantage claim is based solely on the alleged misrepresentations relied on in support of its fraud claim—specifically, the alleged misrepresentations contained in Ravich's "Interference Letters." Again, PureChoice claims that those statements were made by Jeffrey Macke through Ravich. As explained above, the representations made in the Ravich "Interference Letters" cannot be imputed to Jeffrey Macke. Accordingly, they cannot support PureChoice's tortious interference claim against Jeffrey Macke.[6]

## II. Appeal of Magistrate Judge's Order

In her August 1, 2008 Order, Magistrate Judge Nelson addressed issues related to the PureChoice's subpoena seeking from Ravich the production of billing records and communications with Kenneth Macke. In response to the subpoena, Ravich produced some documents and a privilege log. PureChoice brought a motion to enforce the

---

[5] Jeffrey Macke argues that PureChoice's claims fail for the alternative reason that the allegedly fraudulent statements are absolutely privileged under the "litigation privilege." The Court need not reach this issue because, as discussed herein, PureChoice's claims fail for the independent reason that the allegedly fraudulent statements were not made by Jeffrey Macke.

subpoena and for *in camera* review of the documents. After reviewing the documents *in camera*, Magistrate Judge Nelson ordered that, with the exception of an e-mail exchange between an attorney for Kenneth Macke and an attorney for PureChoice, the documents provided for the Court's *in camera* review are protected from disclosure under the work product doctrine. Magistrate Judge Nelson noted that "Mr. Ravich explained that he communicated with [Jeffrey Macke] for the purpose of obtaining [Jeffrey Macke's] input and assistance in connection with his representation of Kenneth Macke." (Doc. No. 113 at 4.) PureChoice appeals the Magistrate Judge's Order.

The Court must modify or set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Local Rule 72.1(b)(2). This is an "extremely deferential standard." *Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Chakales v. Comm'r of Internal Revenue*, 79 F.3d 726, 728 (8th Cir. 1996) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The Court has conducted an *in camera* review of the documents previously reviewed by Magistrate Judge Nelson. Based upon that review, and the record and proceedings herein, the Court concludes that Magistrate Judge Nelson's order is neither

---

(Footnote Continued From Previous Page)
[6]    Because PureChoice's claim fails on this fundamental ground, the Court need not
(Footnote Continued on Next Page)

clearly erroneous nor contrary to law. First, a review of the record and the documents *in camera* reveals that Ravich was representing Kenneth Macke. Second, it is clear that the documents were prepared in anticipation of litigation and that there is no substantial need for the documents containing ordinary work product and no rare and extraordinary circumstances justifying disclosure of the opinion work product. Even if the documents reviewed were part of the record, the result would not only be the same on the motions before the Court, but the Court's *in camera* review of the documents confirms Jeffrey Macke's position that Ravich was at all times representing Kenneth Macke. Therefore, the Court affirms Magistrate Judge Nelson's August 1, 2008 Order in all respects.

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Magistrate Judge Susan Richard Nelson's order of August 1, 2008 (Doc. No. 113) is **AFFIRMED.**

2. Jeffrey Macke's Motion for Summary Judgment (Doc. No. 108) is **GRANTED**.

3. Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 3, 2008

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court

(Footnote Continued From Previous Page)
consider PureChoice's statute of limitations defense.